## APPEAL OF STANDARD BREWING CO.

### Docket No. 193.    Promulgated April 22, 1927.

1. The petitioner is not entitled, under the Revenue Act of 1918, to any deduction from gross income on account of obsolescence of trade-marks and good will.

2. An amount deposited by the petitioner in the year 1920 with a collector of internal revenue as an offer in compromise of certain taxes and penalties, which offer was subsequently increased in 1921 and accepted in that year, is not a proper deduction from gross income for 1920.

3. The petitioner in the year 1916 took out a policy of insurance on the lives of certain of its officers. In the years 1916 to 1919, inclusive, it paid premiums on the policy in the amount of $11,178.50, which it capitalized on its books, and in the year 1920 it surrendered the policy for $6,647, the amount of its cash surrender value. In its income and profits tax-return for the year 1920 the petitioner deducted as a loss the difference between the total amount of premiums paid and the cash surrender value of the policy. *Held*, that the petitioner sustained no loss on the surrender of the policy and that the deduction claimed was properly disallowed.

*W. W. Spalding, Esq.*, for the petitioner.
*John D. Foley, Esq.*, for the Commissioner.
*Arthur A. Ballantine, Esq.*, and *George E. Cleary, Esq.*, as *amici curiae.*

This appeal is from the determination of deficiencies in income tax for the years 1919 and 1920 in the total amount of $4,124.42.

#### FINDINGS OF FACT.

The petitioner is a corporation organized under the laws of the Commonwealth of Pennsylvania, with its principal office and place

of business at Scranton. For many years prior to March 1, 1913, it was engaged in the manufacture and sale of beer, ale and porter under the trade-marks "True Age Beer," "Crystal Ale," and "Atlas Porter," and on that date it had developed for its products and the trade-marks under which they were sold, good will of substantial value. It continued to manufacture beer, ale, and porter until some time in the year 1919 when, the National Prohibition Law having been enacted, it discontinued the manufacture of these products.

In the year 1917, the petitioner began the manufacture of a cereal beverage or "near beer," containing less than one-half of one per cent alcohol, which is sold under the name "Curo." It continued the manufacture of "Curo" until July 1, 1922, at which time it ceased manufacturing and began the liquidation of its assets. The sales of "Curo" were continued until September, 1922. When the petitioner ceased to manufacture beer, ale and porter in the year 1919, it abandoned the trade-marks "True Age Beer," "Crystal Ale," and "Atlas Porter," and made no attempt to transfer them to its "near beer" for the reason that it had built up a value in the trade-mark "Curo" which it did not see fit to abandon in favor of any of its older trade-marks.

The sales of beer, ale, and porter in the years 1910 to 1920, inclusive, were as follows:

| Year. | Barrels. | Year. | Barrels. |
|---|---|---|---|
| 1910 | 121,484 | 1916 | 129,651 |
| 1911 | 129,252 | 1917 | 132,117 |
| 1912 | 124,205 | 1918 | 104,200 |
| 1913 | 139,015 | 1919 | 69,350 |
| 1914 | 128,793 | 1920 | 20,929 |
| 1915 | 136,670 | | |

Shortly after the beginning of the year 1920 such sales ceased. The sales of "Curo" were as follows:

| Year. | Barrels. |
|---|---|
| 1918 | 620 |
| 1919 | 3,054 |
| 1920 | 29,957 |
| 1921 | 39,010 |
| 1922 | 21,437 |

In its income and profits-tax return for the year 1919, the petitioner claimed a deduction from gross income in the amount of $94,874.70, as an allowance for obsolescence of its good will. The Commissioner disallowed the deduction.

In the year 1920, the petitioner was accused of manufacturing, contrary to law, beverages containing more than one-half of one per cent of alcohol and the Commissioner seized its plant and de-

manded a large sum in taxes and penalties and threatened forfeiture proceedings under the National Prohibition Law. On December 30, 1920, the petitioner deposited with the collector of internal revenue at Scranton, Pa., $25,000 as an offer in compromise of all claims against it by the United States arising from said alleged violation of law. On or about March 16, 1921, the amount of $20,000 was deposited by the petitioner with the collector of internal revenue at Scranton as an additional offer in compromise of the claims of the United States against it growing out of said alleged violation of law. On May 10, 1921, the Commissioner of Internal Revenue, with the advice and consent of the Secretary of the Treasury, accepted the amount of $45,000 so paid by the petitioner to the collector " in compromise of all civil liabilities and forfeiture proceedings involved in alleged violation by your company of Sections 3339 and 3244, R. S., Section 608 of the Revenue Act of 1918, and Sections 3, 6, 10 and 25, Title II, of the National Prohibition Act," with the condition that " acceptance of the offer shall not be so construed as to affect any criminal liability of your company or of its officers under Internal Revenue laws or the National Prohibition Act, nor the right of the Government to revoke the permit of your company to manufacture cereal beverages." No criminal proceedings were commenced against the petitioner nor was its permit to manufacture cereal beverages revoked.

The petitioner in its income and profits-tax return for the year 1920, deducted as a business expense the amount of $25,000 deposited in that year with the collector of internal revenue at Scranton as herein set forth. The Commissioner disallowed the deduction.

In the year 1916, the petitioner took out a life insurance policy on the lives of certain of its officers in the amount of $50,000. The premiums paid on the policy in the years 1916 to 1919, inclusive, amounted to $11,178.50. The policy was surrendered by the petitioner in the year 1920, at which time its cash surrender value was $6,647. The petitioner in its income and profits-tax return for the year 1920 deducted as a loss the amount of $4,531.50, that amount being the difference between the total amount of premiums paid on the said policy of insurance and the amount realized by the petitioner upon its surrender. The Commissioner disallowed the deduction.

### OPINION.

MARQUETTE: The first question presented by the record in this appeal is whether the petitioner is entitled to a deduction for obsolescence of good will and trade-marks in computing its net income under the Revenue Act of 1918. Counsel for the Commissioner admit that the petitioner had built up a good will of substantial value but

contend that such good will did not become worthless when the petitioner abandoned the manufacture of beer, ale, and porter, but on the other hand was of value in the "near beer" business in which the petitioner continued to engage.

In passing on this question it is not necessary for us to determine the value of the petitioner's good will and trade-marks, or whether that value was destroyed by the advent of national prohibition. We have heretofore held in the *Appeal of Manhattan Brewing Co.*, 6 B. T. A. 952, that under the Revenue Act of 1918 a taxpayer is not entitled to any deduction from gross income on account of obsolescence of property of the character involved herein. The discussion in the opinion in that appeal is at length and fully sets forth the reasons upon which our conclusion is based, and its repetition will serve no useful purpose here. Upon the authority of the decision in the *Appeal of Manhattan Brewing Co., supra*, we hold that the petitioner herein is not entitled to any deduction in the year 1919 on account of obsolescence of its good will and trade-marks. See also *Red Wing Malting Co.* v. *Willcuts*, 15 Fed. (2d) 626; certiorari denied, 273 U. S. 763.

The second question is whether the petitioner in computing its net income for the year 1920 is entitled to deduct the amount of $25,000 deposited with the collector of internal revenue at Scranton, as an offer in compromise of certain claims of the Government against it arising from alleged violations of the National Prohibition Act. The petitioner contends that the amount in question represented a business expense.

We are of the opinion that the petitioner is clearly not entitled to the deduction claimed, regardless of whether an expenditure of the kind under consideration constitutes an ordinary and necessary business expense, which question we do not feel called upon to decide. The amount deposited by the petitioner with the collector in 1920 was for the purpose of compromising certain taxes and penalties to which the United States claimed the petitioner had become liable. The offer was not accepted, and, in March, 1921, it was increased to $45,000. The total offer was accepted by the Commissioner on May 10, 1921, and until that date the money so deposited with the collector remained the property of the petitioner. If the offer in compromise had not been accepted the Government would have been required to return the amount thereof to the petitioner. It is, therefore, apparent that the amount which the petitioner seeks to deduct from gross income for 1920 does not in fact represent an expense either paid or incurred in that year.

The third question involves the right of the petitioner to a deduction from gross income for the year 1920 on account of a loss

claimed to have been sustained by it in that year upon the surrender of a certain policy of insurance. The record discloses that in the year 1916 the petitioner took out a life insurance policy on the lives of certain of its officers. During the years 1916 to 1919, inclusive, it paid in premiums on this policy the amount of $11,178.50, which it capitalized upon its books. In the year 1920, the petitioner surrendered the policy and received as the cash surrender value thereof $6,647. In computing its net income for the year 1920, it claimed as a deduction the difference between the total amount of premiums paid and the amount received upon the surrender of the policy. The deduction was disallowed by the Commissioner.

We regard the action of the Commissioner as correct. To the extent that the premiums paid by the petitioner created in it a right to a surrender value, they constituted a capital investment. To the extent they exceeded the surrender value, they constituted payment for earned insurance and were current expenses. *Appeal of E. A. Armstrong*, 1 B. T. A. 296. The surrender value of the policy was the measure of the investment and upon the surrender there was no capital lost.

> *Judgment will be entered for the respondent on 15 days' notice, under Rule 50.*